[Cite as *State v. Curry*, 2014-Ohio-3836.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2012-CA-50 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-156 |
| v. | : | |
| | : | |
| DAMIEN R. CURRY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 5th day of September, 2014.

. . . . . . . . . . .

ELIZABETH A. ELLIS, Atty. Reg. #0074332, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

GARY C. SCHAENGOLD, Atty. Reg. #0007144, 4 East Schantz Avenue, Dayton, Ohio 45409
      Attorney for Defendant-Appellant

DAMIEN R. CURRY, #669-694, Lebanon Correctional Institution, Post Office Box 56, Lebanon, Ohio 45036
      Defendant-Appellant, *pro se*

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Defendant-appellant, Damien Curry, appeals from his conviction for two counts of Murder with accompanying firearm specifications.   For the reasons that follow, we Affirm.

## I.   Facts and Course of Proceedings

{¶ 2}    On December 26, 2011, Charles Greene was in Lexington Park in Xenia, Ohio when he noticed a body on the ground.   He returned to his home near the park and called the police.   Xenia police responded to the call and determined that the individual in the park, later identified as Robert Moore, was deceased.   He was found face-down in a pool of blood and brain matter with a bullet hole in his head.   A .40 caliber bullet shell casing was found nearby.

{¶ 3}    On January 1, 2012, Acacia Mundy contacted the Xenia police and provided information regarding Moore's death.   From this information, investigating detectives identified a rental vehicle which had been rented by Tamesha Rollings who, at the time, was Damien Curry's girlfriend.   The vehicle, a green Kia Soul, which was located at a body shop in Columbus, tested positive for a bullet strike.   Gunshot residue was recovered from the passenger door.

{¶ 4}    The police interviewed Rollings who indicated that she and Moore had previously provided recorded statements implicating Curry and his friend in an on-going criminal investigation.   According to Rollings, Curry received copies of the statements from his attorney on December 24, 2011.   After viewing the recordings, Curry took Rollings on a ride in the Kia at which time he threatened to kill Rollings and Moore.   Rollings felt threatened enough to jump out of the vehicle.

{¶ 5}    On December 25, Curry asked Mundy to drive him around in the Kia while he attempted to sell drugs. Mundy agreed.   During the ride, Moore called Curry seeking to purchase

cocaine. Mundy and Curry went to a local bar where they picked up Moore. The three then drove to Lexington Park and parked. Curry exited the vehicle in order to use the restroom. Moore got out of the vehicle and followed Curry. Mundy observed Moore jab at Curry in what she assumed was a "playful" fight. Tr. p. 301. She then observed the two walking back to the car with Moore in the lead. Mundy then heard a loud "boom," and felt something hit the car which caused the car to shake. *Id.* at 303. Curry then opened the front passenger door and got into the vehicle. Curry told Mundy to drive away and stated that Moore was "dead as a motherf**r." *Id.* at 305.

{¶ 6} The pair joined friends at a local hotel where they had some drinks and watched a basketball game. At some point, Curry left and returned the Kia to Rollings who returned it to the rental agency in Columbus.

{¶ 7} Curry was arrested and advised of his rights. At that time he denied involvement in the shooting. Two days later, on April 10, 2012, Curry requested to speak with the investigating detective. He admitted to committing the offense.

{¶ 8} On April 13, 2012, Curry was indicted on two counts of Murder, both with weapons specifications, and one count of Having Weapons While Under Disability. He was arraigned on April 20, at which time he entered a plea of not guilty. In May, Curry filed a motion for change of venue as well as a motion to suppress his confession to the police. Both were denied. Trial was set for July 16, 2012. Curry also filed a motion for appointment of an attorney to sit as a second chair at trial which was granted by the trial court. Curry filed a motion in limine to prevent the State from making reference to his prior crimes and he waived jury trial on the count of Having Weapons While Under Disability. The count of Having

Weapons While Under Disability was dismissed by the State.

{¶ 9}     On July 3, 2012, Curry filed a plea of not guilty by reason of insanity and a motion for competency evaluation.  A hearing on the motions to enter a plea of not guilty by reason of insanity and for an evaluation was held on July 11, 2012, at which time the motions were denied.  Trial was conducted on July 16, 2012, following which Curry was found guilty of both counts of Murder along with the weapons specifications. The trial court found that the two counts were allied offenses and the State elected to proceed with sentencing on the first count. Curry was sentenced to prison for fifteen (15) years to life and a three year firearm specification was also imposed.

{¶ 10}  Curry filed a notice of appeal and counsel was appointed to prosecute the appeal. On November 16, 2012, appointed appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), wherein he indicated that in his judgment there were no meritorious issues to raise on appeal. Counsel did assert three possible arguments but concluded that these potential issues lacked merit.  This court notified Curry that his counsel had filed an *Anders* brief and we invited him to file a pro se brief.  Curry filed a pro se brief on March 7, 2013, in which he asserted five Assignments of Error.  On October 24, 2013, Curry filed a pleading, which purported to be pursuant to Civ.R. 15, seeking to file an amended and supplemental pleading adding two additional Assignments of Error.   This matter is now before the court.

## II.  *Anders* brief

{¶ 11}  Assigned counsel filed a brief in this appeal stating that he had been unable to find any viable issues for appeal.  He did identify three possible arguments to raise on appeal

which he determined lack substantial merit.

{¶ 12}  The first potential issue raised by appointed counsel involves the confession made by Curry while in custody.   As stated above, a motion to suppress the confession was filed by Curry's trial counsel.  A hearing was held on June 14, 2012.  Evidence was submitted that Curry had signed a waiver of his rights.  The recorded interview with the detective was also submitted.  There is no indication that Curry was coerced or under duress or that anything was promised to him in exchange for his testimony. Moreover a written waiver of Miranda rights is strong evidence that a defendant voluntarily, knowingly and intelligently waived his rights. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).   In short, there is nothing in the record to demonstrate that Curry's statements made during the interview were not knowingly and voluntarily made after he had been advised of his rights.   Instead, it appears that Curry decided to admit his role in the shooting in order to implicate Rollings and Mundy for what he claimed were active roles in the murder.   We find this argument lacks arguable merit.

{¶ 13}  The second potential issue raised by counsel involves the fact that there were no African-Americans in the jury pool. The appellant raises the same argument in his pro se brief. For the reasons set forth in Part III, below, we conclude this issue lacks arguable merit.

{¶ 14}  The final potential issue identified by counsel questions whether the verdict is supported by the evidence.

{¶ 15}  The record contains evidence upon which a jury could conclude that Curry discovered that Moore had implicated him in a prior crime and that Curry threatened to kill Moore.  There is also undisputed evidence that Curry and Mundy took Moore out to Lexington Park where Curry shot Moore in the head.   Mundy and Rollings both testified that Curry

admitted to killing Moore. A letter sent by Curry to Denai Rogers contained Curry's confession to the murder. Curry also admitted to the police that he had shot Moore.

{¶ 16} We conclude that there is evidence in this record to support the convictions. Thus, we find that this issue lacks arguable merit.

### III. Appellant's pro se brief.

{¶ 17} We next turn to Curry's brief on appeal. Curry's First Potential Assignment of Error states:

APPELLANT'S CONVICTION WERE [SIC] AGAINST THE MANIFEST WEIGHT OF EVIDENCE AND WERE [SIC] NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE DUE IN PART TO THE STATE'S FAILURE TO ESTABLISH VENUE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, ARTICLE I, SECTION I, 10 & 16 OF THE OHIO CONSTITUTION, R.C. 2901.12, AND CRIM.R. 29.

{¶ 18} Curry contends that the convictions must be reversed because the State failed to establish venue. Specifically, he argues that the State failed to demonstrate exactly where the crime occurred or that it occurred in Greene County. It appears his argument is based upon his theory that the State was only able to show where the victim's body was found. Initially we determine that this argument is frivolous because the issue was not preserved for appeal. Trial counsel made a general Crim. R. 29 motion for a judgment of acquittal at the close of the State's case. Tr. p. 481. No reference was made to the issue of venue. At the close of all the evidence, counsel renewed the Crim. R. 29 motion. Tr. p. 567. The only specific reference in that motion

was that the evidence was insufficient as to "mental culpability." *Id*. No mention of venue was made. Under these circumstances the issue of venue was not raised or preserved for appeal. *State v. Mielke*, 12th Dist. Warren No. CA2012-08-079, 2013-Ohio-1612, ¶ 16 (general argument for Crim.R. 29 motion did not raise venue issue and therefore waived venue for purposes of appeal); *State v. Shedwick*, 10th Dist. Franklin No. 11AP709, 2012-Ohio-2270, ¶ 37 (no objection to venue made during the Crim.R. 29 motion or at any time during the trial waives issue except for plain error). This alone leads us to conclude that Curry's venue contention lacks arguable merit.

**{¶ 19}** R.C. 2901.12 requires that the trial of a criminal case be conducted in the territory where the offense was committed. Venue is not a material element of criminal offenses, however it is a fact that the State must prove unless waived by the defendant. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). "The standard of proof is beyond a reasonable doubt, although venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case." *Id.*

**{¶ 20}** The State argues that Charles Greene, who testified that he lives in Xenia, Greene County, Ohio, also testified that Lexington Park - where the body was found - is located in Xenia. This is, at best, incomplete. Mr. Greene merely testified that his driveway is "right next to where that road comes from up to the park." Tr. p. 60. Despite the fact that he lives next to a road that is linked to a park does not mean that they are in the same city or even county. It is possible that the county or city line ends in between those two locations. Further, Mr. Greene did not testify that Lexington Park is located in Xenia or even in Greene County.

**{¶ 21}** The State next claims that Xenia Police Sergeant Steven Lane testified that Lexington Park is an area known as the east side of Xenia. However, more accurately, the State

asked Lane whether he was asked to "respond to an area known as the east side of Xenia, specifically, the Lexington Park area," to which he responded affirmatively. He did not specifically testify that Lexington Park is located in Xenia nor did he testify that the park is in Greene County.

{¶ 22} Finally, the State contends that venue was established by Acacia Mundy who testified that she drove Curry to Lexington Park where he shot Moore. This alone does not establish venue.

{¶ 23} However, this court has previously held that testimony that a certain locality's police department investigated the alleged crime may be sufficient to establish venue. *See*, *State v. Norton*, 2d Dist. Greene No. 97 CA 112, 1998 WL 853022, * 7 -8 (Dec. 11, 1998). In this case, the evidence establishes that the shooting took place in Lexington Park. Mundy and Curry both testified to that fact. Further, Moore's body was found in the park laying in a pool of blood and brain matter. The Xenia police responded to that crime scene. We conclude that these facts, along with Lane's affirmative response to the State's question cited above, is more than sufficient to establish venue and that an argument to the contrary does not have arguable merit.

{¶ 24} Additionally, venue lies in any jurisdiction in which the offense or any element of the offense was committed. R.C. 2901.12(A). The testimony of Detective Barlow reveals that Curry himself said that shortly before they picked up Bobby Moore "[h]e said that he knew then that he was going to smoke him." Tr. p. 465. Curry decided this was going to happen at Lexington Park. *Id.* This established the element of intent already formulated when Curry and Acacia Mundy picked up Moore at Chubby's bar on Church Street in Xenia. Tr. p. 296. That evidence so clearly establishes venue that appellant's factual argument to the contrary is also

frivolous.

{¶ 25} Curry's First potential Assignment of Error lacks arguable merit.

{¶ 26} Curry next asserts the following Second potential Assignment of Error:
APPELLANT'S CONVICTION WAS VIOLATED OF [SIC] THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES [SIC], IN NOT DESIDING [SIC] AND FOR NOT PANELIN [SIC] JURY OF AFRICAN AMERICANS TO BE NOT OF A RACIST AND BIAS TRIAL THAT HAS OCCURED [SIC].

{¶ 27} Curry contends that his trial was unfair because there were no African-Americans in the jury pool. In support, he cites *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1985).

{¶ 28} We note that Curry does not contend that the State improperly struck African-Americans from the jury. Instead, his complaint is focused on his claim that no African-Americans were in the array of potential jurors.

{¶ 29} Crim.R. 24(F) permits a challenge to the array of petit jurors on the basis that it "was not selected, drawn or summoned in accordance with law." Similarly, R.C. 2313.16 permits a challenge to the array. "In order to establish a violation of the fair representative cross-section of the community requirement for a petit jury array under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant must prove: (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic

exclusion of the group in the jury-selection process." *State v. Fulton*, 57 Ohio St.3d 120, 566 N.E.2d 1195 (1991), paragraph two of the syllabus.

{¶ 30} We note that Curry did not challenge the array until after voir dire was conducted. Crim.R. 24(F) requires that such challenges be made "before the examination of the jurors * * *." Thus, Curry's challenge was not timely made. *See*, *State v. Walker*, 2d Dist. Clark No. 08-CA-32, 2009-Ohio-1936, ¶ 7-14. For that reason his challenge lacks arguable merit.

{¶ 31} Further, the record before us does not contain any information about the racial makeup of the jury pool, nor does Curry demonstrate any evidence regarding the race of the members of the jury pool. Even assuming that there were no African-Americans in the pool of potential jurors, there is absolutely no evidence in this record to demonstrate that there was systematic exclusion of African-Americans or that the potential jurors were not selected in accord with the law.

{¶ 32} Curry's Second potential Assignment of Error lacks arguable merit.

{¶ 33} Curry's Third potential Assignment of Error is as follows:

APPELLANT CONVICTION WAS IN VIOLATION CRIMINAL JUSTICE ACT, 18 U.S.C. $3006 A WHICH REQUIRE A [SIC] INDIGENT THE RIGHT TO PSYCHIATRIC ASSISTANCE FOR A [SIC] ADEQUATE DEFENSE, WHICH VIOLATED THE DEFENDANT A FAIR TRIAL [SIC].

{¶ 34} Curry argues that the trial court erred by refusing to accept his plea of not guilty by reason of insanity and by denying his request for a competency evaluation.

{¶ 35} We begin with the insanity defense raised by Curry. "The defense of not guilty by reason of insanity must be pleaded at the time of arraignment, except that the court for good

cause shown shall permit such a plea to be entered at any time before trial." Crim.R. 11(H). "In Ohio, the defendant in a criminal case is presumed at law to be sane, and the burden of proof rests upon the defendant to prove, by a preponderance of the evidence, that he was insane within the meaning of the law at the time the act was committed." *State v. Johnson*, 31 Ohio St.2d 106, 119, 285 N.E.2d 751 (1972). "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14).

{¶ 36} Curry's memorandum in support of entering his plea of not guilty by reason of insanity does not address the untimeliness of the plea and makes no attempt to demonstrate a reason for filing the plea late. Therefore the trial court had no basis to conclude there was "good cause shown" (Crim. R. 11(H)) to allow the plea. As previously noted, Curry was indicted on April 13, 2012, and arraigned shortly thereafter. He filed multiple motions during the pendency of the case, and a hearing was held on the motion to suppress. The July 16, 2012 trial date was set on May 21. Curry filed his plea just thirteen days prior to trial.

{¶ 37} Further, the filing did nothing to establish the basis for such a plea. The trial court conducted a hearing on the matter, trial counsel stated that Curry had mentioned that he was worried he might get shot on the way to trial and that Curry was more focused on "vengeance" than on his trial. Counsel further stated that Curry had mentioned "suicidal ideation" in letters he wrote to people while in jail. No evidence was presented to show a connection between these claims and Curry's state of mind well after the commission of the crime.

{¶ 38} We conclude that Curry has shown no basis for the entry of an insanity plea nor

has he shown just cause for the late filing thereof. Accordingly a challenge to the trial court's denial of the late plea lacks arguable merit.

{¶ 39} We next turn to the issue of the request for a competency evaluation.

{¶ 40} R.C. 2945.37(B) provides that "[i]n a criminal action in a court of common pleas,* * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion." "A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial * * * ." R.C. 2945.37(G). "The burden is on the defendant to submit enough evidence to put the question [of competency] at issue." *State v. Carson*, 2d Dist. Greene No. 2002-CA-73, 2003-Ohio-5958, ¶ 30, citing *State v. Bailey*, 90 Ohio App.3d 58, 67, 627 N.E.2d 1078 (11th Dist. 1992). The "ordering of an examination is a matter within the discretion of the trial court." *Id.*, citing R.C. 2945.371(A).

{¶ 41} The motion in support of the competency evaluation merely stated that "counsel is concerned" that Curry "may not be competent to assist Counsel with his defense." Dkt. 48. Counsel's basis for this motion, stated during the hearing, is the same as that cited above for the insanity plea. The trial court conducted questioning of Curry during which Curry acknowledged that he understood that trial was scheduled and that he still wanted a jury trial. He indicated that

he was able to work with his counsel, but would like to have more time to spend with them working on his case. He stated that he was satisfied with his attorneys. Curry even argued to the trial court his belief that the State should not be permitted to redact certain evidence and that he should be able to review the evidence in its entirety. In sum, Curry was coherent and participated during the hearing and there was no indication whatsoever that he did not understand the nature of the proceedings or that he could not assist counsel in his defense. Indeed, the transcript of the hearing indicates that Curry was very engaged in his defense and that he had a good grasp of the process. There is nothing in the record to suggest that the trial court abused its discretion by not ordering a forensic competency evaluation and therefore Curry's contention to the contrary lacks arguable merit.

{¶ 42} Curry's Third potential Assignment of Error lacks arguable merit.

{¶ 43} The Fourth potential Assignment of Error asserted by Curry states:

APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AS A RESULT OF PROSECUTORIAL MISCONDUCT, THIS VIOLATED DUE PROCESS OF LAW WHICH THE DEFENDANT WAS PREJUDICED BY.

{¶ 44} Curry contends that prosecutorial misconduct deprived him of his right to a fair trial. Specifically he claims that the prosecutor, during opening statement, introduced his own testimony regarding what the witnesses at trial would say. Curry further contends that the prosecutor engaged in misconduct when a witness for the State testified that no promises were made to her in exchange for her testimony against him when she ultimately was given the deal she wanted. He argues that the prosecutor acted improperly by failing to prosecute Acacia Mundy and Tamesha Rollings for their alleged involvement in the offense. Finally, Curry

claims that the prosecutor improperly introduced a letter into evidence.

{¶ 45}   The test for prosecutorial misconduct is whether the prosecutor's actions or remarks were improper, and if so, whether they prejudicially affected the accused's substantial rights. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The question is whether the prosecutor's misconduct so infected the accused's trial with unfairness that the accused's convictions came in violation of the right to due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 644, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

{¶ 46}   Curry concedes that there was no objection at trial to the alleged prosecutorial misconduct so that we must review his claims for plain error.   Plain error is not present unless, but for the error complained of, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. A finding of plain error should be made with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id*. at paragraph three of the syllabus.

{¶ 47}   We begin with the claim that the prosecutor gave improper testimony during opening statement by summarizing the testimony that would be presented by the State's witnesses.

{¶ 48}   In Ohio, "the function of an opening statement by counsel in a jury trial is to inform the jury in a concise and orderly way of the nature of the case and the questions involved, and to outline the facts intended to be proved."   *Maggio v. City of Cleveland*, 151 Ohio St. 136, 84 N.E.2d 912 (1949), paragraph one of the syllabus.   "In the opening statement of any case

counsel in good faith may make statements as to what they expect to prove by competent testimony." *State v. Colley*, 78 Ohio App. 425, 426, 65 N.E.2d 159 (2d Dist.1946). We have reviewed the entire opening statement and cannot find any example of the prosecutor submitting his own testimony or improperly outlining the facts that he expected to garner from testimony. Thus, we find this claim without merit.

{¶ 49} We next address the claim that the prosecutor committed misconduct when Tamesha Rollings testified that she hoped to get a lighter sentence in a criminal case pending against her in exchange for testifying against Curry. Curry appears to argue that the fact that Rollings subsequently received a lighter sentence indicates that the prosecutor did make a promise to her regarding her sentence, and that Rollings lied regarding that fact. Curry has attached to his appellate brief a copy of a document purporting to be the entry plea of guilty filed by Tamesha Rollings in which she pleaded guilty to a charge that had been amended to a third degree felony. The document does not contain the actual sentence imposed. In any event, we cannot take notice of this document as it is not authenticated and is not a part of the record on appeal.

{¶ 50} The colloquy between Rollings and the prosecutor regarding her expectations is as follows:

Q: Now, Tamesha, I want to talk to you about your charges that we discussed earlier. You are presently under Indictment?

A: Yes.

Q: In Greene County?

A: Yes.

Q: For a very serious crime?

A: Yes.

Q: In fact, it's a felony of the first degree?

A: Right.

* * *

Q: After Mr. Curry was found, isn't it true that you agreed to cooperate in the case against Mr. Curry?

A: Yes.

Q: And this [testifying] is part of that cooperation?

A: Yes, it is.

Q: Now, Tamesha, I want to make sure the Jury understands. You are cooperating because you expect something in return?

A: Yes.

Q: And what is it that you expect in return?

A: Probation and a lesser charge.

Q: And my question to you, Tamesha, is very simple. Has anybody from the Prosecutor's Office told you that that's going to happen?

A: No.

Q: Is there any written agreement between you, your attorney and the Prosecutor's Office that says that?

A: No.

Q: And have you been told that - - have you been promised by anybody

from the Prosecutor's Office that you wouldn't be prosecuted for anything related to Mr. Moore's case?

A: No.

**{¶ 51}** . There is nothing to indicate that Rollings lied to the jury about either her own case or Curry's actions. If Rollings was improperly influenced by the State, and if such influence led to perjury, evidence of such is outside the record on appeal. Rollings' credibility was a matter for the jury to determine. The jury was clearly apprised by the State of Rollings' indictment and her expectations for providing evidence against Curry. We can find no prosecutorial misconduct regarding this matter on this record.

**{¶ 52}** Finally, we address the claim that the State improperly introduced a letter written by Curry to Denai Rogers in which he admits to shooting Moore. Curry contends that the introduction of the letter constitutes misconduct because the letter was not properly authenticated and because its probative value was outweighed by its prejudice. This is more of an evidentiary issue than a misconduct issue. However, we conclude that the letter was properly authenticated and admitted. Rollings testified that she was familiar with Curry's handwriting and she testified that the letter was in Curry's hand. Rogers testified that she received this letter, and others, from Curry. Finally, Curry testified that he had written the letter. We find no misconduct.

**{¶ 53}** Curry's Fourth potential Assignment of Error lacks arguable merit.

**{¶ 54}** Curry's Fifth potential Assignment of Error states:

THE APPELLANT WAS DENIED THE RIGHT TO EFFECTIVE COUNSEL UNDER THE SIXTH AMENDMENT TO THE FOURTEENTH AMENDMENT [SIC].

{¶ 55} Curry contends that he was denied the effective assistance of trial counsel because counsel failed to challenge the indictment. He further claims that counsel failed to produce witnesses to testify on behalf of Curry. He further contends that counsel was ineffective because he did not challenge Rollings' testimony. Curry also claims that counsel did not effectively pursue a competency hearing or the entry of an insanity plea. Finally, he claims that counsel was not effective because he failed to present an effective defense and falsely told him that if he testified truthfully the jury would only convict him of Manslaughter.

{¶ 56} To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, at 688. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860, ¶ 58.

{¶ 57} We turn first to the claim that the indictment was defective and that counsel should have objected thereto. Curry claims that the indictment failed to include the appropriate mens rea because it did not include the terms "willfully, knowingly, and intentionally." He is simply wrong. A review of the indictment shows that the correct mens rea of "purposely" was included in Count I which alleges that Curry committed Murder in violation of R.C. 2903.02(A).

Further, the pertinent language of the indictment with regard to Count II, Murder in violation of R.C. 2903.02(B) as well as the firearm specifications (R.C. 2941.145) for both counts properly tracked the language of the relevant statutes. "An indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state." *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, paragraph one of the syllabus. Therefore, omission of a mental state from Curry's indictment would not constitute a defect. Further, the omission of the mens rea element from an indictment does not require reversal where, as here, the trial court properly instructs the jury. *State v. Lester*, 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038, at ¶ 16. Thus, the record fails to support an argument that counsel was ineffective in this regard.

{¶ 58} We next turn to the claim that counsel failed to produce any witnesses to testify on Curry's behalf. The record does demonstrate that no one, other than Curry, testified during the presentation of his case. However, there is nothing in this record to indicate the names of potential witnesses nor their expected testimony. He further does not claim any resulting prejudice. The record does not compel us to find that there were omitted potential witnesses. Again there is nothing in the record to support an argument that this renders counsel ineffective.

{¶ 59} Curry also contends that counsel was ineffective because he failed to challenge Tamesha Rollings with regard to her testimony that she had not been promised anything in return for her testimony. As noted above, Curry claims that Rollings lied with regard to whether she had been promised a lighter sentence in exchange for her testimony. The record contains no evidence upon which we can conclude that Rollings committed perjury. Further, we note that counsel did question Rollings and got her to admit that she was, in fact, testifying against Curry

because she was attempting to make a deal with the prosecutor for a lighter sentence. Thus, counsel called Rollings' credibility into question. We find no merit to the claim that counsel was ineffective in this regard.

{¶ 60} Next, Curry contends that counsel did not effectively pursue the filing of an insanity plea or the request for a competency hearing. As noted previously, there is nothing in this record to support a finding that Curry suffered from any mental defect at the time of the offense or that he was not competent to stand trial. Likewise, there is nothing in this record upon which we can conclude that counsel was able to garner any other competent evidence to support these issues. The trial court did conduct a hearing on these claims. Without more, we cannot conclude there is any merit to the claim that counsel was ineffective.

{¶ 61} Finally, Curry claims that counsel did not present an effective defense and that counsel improperly informed him that if he testified the jury would convict him of Voluntary Manslaughter rather than Murder. First, we note that counsel was able to secure an instruction on Voluntary Manslaughter indicating that he did present a defense and a theory of the case. The fact that the jury did not accept that defense does not render counsel ineffective. Further, there again is no evidence in the record upon which we can determine that counsel made any promise that Curry would be convicted of the lesser offense if he testified. Clearly, in order to present his claim that he acted in a manner consistent with a Voluntary Manslaughter charge, counsel for Curry needed to present evidence that Curry acted while under the influence of a sudden passion or fit of rage brought on by serious provocation that was sufficient to incite Curry to use deadly force. Thus, it was not unreasonable to have Curry testify thereto.

{¶ 62} We conclude that Curry has failed to demonstrate that counsel's conduct fell

below an objective standard of reasonableness.   Accordingly, the Fifth potential Assignment of Error lacks arguable merit.

{¶ 63}   The Sixth potential Assignment of Error raised by Curry states:

THE FAILURE TO DISCLOSE THAT THE STATE WITNESS WAS PROMISED A LESSER SENTENCE OF A PREVIOUS CRIME THAT WAS COMMITTED, FROM A 1ST DEGREE TO A THIRD DEGREE WITH PROBATION, IF TESTIFY [SIC] AGAINST THE DEFENDANT, THIS CREATED A VIOLATION OF THE 14TH AMEND. [SIC] DUE PROCESS AND EQUAL PROTECTION OF LAW.

{¶ 64}   In this Assignment of Error, Curry again takes issue with the testimony of Tamesha Rollings claiming that she lied about being promised a lighter sentence in exchange for her testimony against him.   For the reasons set forth in the Fourth potential Assignment of Error above, the record does not support this argument.

{¶ 65}   The Sixth potential Assignment of Error lacks arguable merit.

{¶ 66}   Curry's Seventh potential Assignment of Error is as follows:

THE CUMULATIVE DOCTRINE OF ERROR ARRISED [SIC], THE CONVICTION IN ERROR TO CREATE A DENILE [SIC] OF THE DEFENDANTS [SIC] RIGHT TO A FAIR TRIAL AND DEPRIVED THE DEFENDANTS [SIC] RIGHT TO THE CONSTITUTIONAL RIGHTS.   THIS CONVICTION VIOLATED THE EQUAL PROTECTION AND DUE PROCESS OF THE LAW, (5TH, 14TH), AMEND [SIC].

{¶ 67}   Curry argues that the doctrine of cumulative error mandates a reversal of his

conviction. He further raises an argument that his confession was improperly admitted despite the failure of the State to establish the corpus delicti.

**{¶ 68}** The cumulative-error doctrine states that "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). Having found no error, let alone cumulative error, we find this argument lacks merit.

**{¶ 69}** Next Curry argues that the State failed to establish the corpus delicti thus preventing the admission of his confession.

**{¶ 70}** This court has previously discussed the issue of the corpus delicti in *State v. Gabriel*, 170 Ohio App.3d 393, 2007-Ohio-794, 867 N.E.2d 474, ¶ 56-57 (2d Dist.), *reversed on other grounds*, *In re Criminal Sentencing Cases*, 116 Ohio St.3d 31, 2007-Ohio-5551, 876 N.E.2d 528, wherein we stated:

> The corpus delicti of an offense consists of the act and the criminal agency of the act. Before a confession of a crime may be admitted at trial, the state must introduce evidence independent of the confession to establish the corpus delicti of the offense. The corpus delicti rule is designed to protect "persons who confess to crimes that they not only did not commit themselves, but which were never committed by anyone." Accordingly, "this rule does not require evidence, other than the confession, showing that the accused committed the crime but, rather, requires some evidence that a crime was, in fact, committed."
>
> "The evidence presented need not be so strong that it is capable of

persuading a factfinder on some element of the crime beyond a reasonable doubt." Nor must the evidence be "even enough to make it a prima facie case." Rather, "[i]t is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." The corpus delicti rule does not require evidence related to all elements of the crime. Furthermore, the evidence need not be direct but, rather, may be circumstantial. Although the rule remains applicable, the Supreme Court has indicated that it need not be applied "with a dogmatic vengeance." (Citations omitted.)

**{¶ 71}** The Supreme Court of Ohio has stated that "[i]n light of the myriad procedural protections granted defendants in modern criminal practice, however, 'the corpus delicti rule is supported by few practical or social policy considerations.' " *State v. Van Hook*, 39 Ohio St.3d 256, 261, 530 N.E.2d 883 (1988). Thus, while the corpus delicti rule requires the State to present some independent evidence of the criminal act and criminal agency, that burden is minimal. *Id.*; *State v. Barker*, 2d Dist. Montgomery No. 23691, 2010-Ohio-5744, ¶ 10.

**{¶ 72}** In this case, the State presented evidence other than the confession. Mundy testified that she drove Curry to Lexington Park along with Moore. She testified that both men exited the vehicle, she heard a gunshot and then Curry got back in the car and stated that Moore was dead. Rollings testified that Curry told her he had killed Moore. We find that this evidence is more than sufficient to satisfy the corpus delicti rule.

**{¶ 73}** The Seventh potential Assignment of Error lacks arguable merit.

## IV. Conclusion.

**{¶ 74}** We determine that the proposed issues raised by assigned counsel do not have

arguable merit. Likewise, Curry's pro se potential Assignments of Error, on the record on this appeal, are lacking in arguable merit.

**{¶ 75}** Pursuant to our responsibilities under *Anders*, we have undertaken an independent review of the record on appeal and having done so, we conclude as did appointed appellate counsel, that there are no arguably meritorious issues for appellate review.

**{¶ 76}** The judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Elizabeth A. Ellis
Damien R. Curry
Gary C. Schaengold
Hon. Stephen Wolaver