[Cite as *In re S.H.*, 2026-Ohio-1077.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: S.H.                  :         APPEAL NO.    C-250361
                                         TRIAL NO.     24/1684-01 X

                               :

                                       *JUDGMENT ENTRY*

                               :

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**
**Enter upon the journal of the court on 3/27/2026 per order of the court.**

**By:**_____
         **Administrative Judge**

[Cite as *In re S.H.*, 2026-Ohio-1077.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| IN RE: S.H. | : | APPEAL NO. | C-250361 |
| | | TRIAL NO. | 24/1684-01 X |
| | : | | |
| | | *O P I N I O N* | |
| | : | | |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 27, 2026

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee State of Ohio,

*Brian T. Goldberg*, for Defendant-Appellant S.H.

**ZAYAS, Presiding Judge.**

{¶1}     Defendant-appellant S.H. appeals his delinquency adjudication for acts that, if committed by an adult, would constitute the offense of failure to comply with a police officer's order or signal in violation of R.C. 2921.331(B) and (C), a third-degree felony.  In a single assignment of error, he argues that the charge should have been dismissed where the State failed to establish venue.  Because the evidence was sufficient to establish venue by circumstantial evidence and because S.H. presents no further challenge to his adjudication, we overrule the sole assignment of error and affirm S.H.'s delinquency adjudication.

## I.  Factual and Procedural History

{¶2}     At around 2:30 a.m. on August 11, 2024, Officer Camardo from the Indian Hill Rangers was conducting routine patrol, traveling southbound in his police vehicle on Given Road.[1]  As he was approaching "its intersection" with Kugler Mill, he noticed a vehicle traveling eastbound on Kugler Mill at a high rate of speed, "enough to get [his] attention."  Officer Camardo approached the four-way stop, saw the vehicle approaching, and the vehicle also came to a stop.  He testified, "We kind of meet at the same time."  He signaled the vehicle to "go ahead and turn" by flipping his headlights. The vehicle turned left, heading in the direction Officer Camardo just came from.  As the vehicle "pulled," he saw four male occupants and "stuck his head out" to get the license plate.  He ran the vehicle registration, which came back expired.  He "went to make a U-turn to try to catch up to the vehicle," but did not activate his overhead lights

---

[1] The transcript reflects the use of both "Gibbon" Road, and "Given" Road during the officer's testimony, but both appear to be referencing the same road, despite the apparent discrepancy in pronunciation and/or transcription.  The transition from "Gibbon" to "Given" occurs without mention in the transcript.  The magistrate, court, and the parties all simply reference "Given" Road, so the use of "Gibbon" appears to be simply a transcription issue.  Therefore, this court uses Given Road for the purposes of this opinion.

or his siren at this point. After he made "basically a three-point turn," he noticed the vehicle start to accelerate, getting further and further away from him. The vehicle was traveling at a high rate of speed and ultimately turned east (right) onto Camargo Road. Officer Camardo testified, "I could not close the distance on it, and I was going at a high rate of speed." His estimate at this point was 60 m.p.h., in an area with a 35-m.p.h. limit. He went down Camargo Road and saw taillights in a private drive. Knowing Camargo Road was a dead-end road, he parked at the "Little Red School House" because he figured the car would have to come back out eventually.

{¶3} Around 20 minutes later, he saw headlights coming up Camargo Road to where he was sitting at the Little Red School House. He knew it was the same vehicle once he "got behind it and confirmed that it was the same license plate." The vehicle made a right-hand turn onto Given from Camargo, turned off all its lights, and headed north on Given Road at a high rate of speed. Officer Camardo testified, "As soon as that happened, I activated my overhead lights, audible siren." This occurred "within a second" of the vehicle accelerating, when Officer Camardo was ten to 15 feet away from the vehicle. He pursued the vehicle, traveling in excess of 80 m.p.h. He testified that he "could not keep up with the vehicle." He estimated that the vehicle was traveling over 100 m.p.h. He said that his vehicle's bumper and overhead lights were functioning and bright that day, and his siren was functioning that day and was loud enough to be heard from far away.

{¶4} He continued to pursue the vehicle on Given, passing Keller Road and Spooky Hollow. As the vehicle approached Spooky Hollow, he saw "sparks" coming from what appeared to be the vehicle leaving the roadway briefly, "causing it to kind of bottom out." He lost visual at this point, separation occurring due to the vehicle's rate of speed. He maintained visual "for the most part," until the vehicle "kind of

4

crested the bottom of that hill going down Given Road towards Livingston." He went left on Spooky Hollow, then went back up the hill, looked down Given, and "could see the light right at Livingston Lodge -- taillights." The vehicle was "in the side of" the building. He saw three male "subjects" running from the passenger side of the vehicle into the wood line, and then one male subject was outside the driver's side. He identified S.H. in court as the male by the vehicle. He said S.H. was "[d]istraught, emotional, [and] frantic," and kept saying, "I fucked up. I fucked up." Because the vehicle had crashed, he asked questions to start getting medical attention there. He also asked S.H. if he was driving, and S.H. said yes. He further asked S.H. why he did not stop, and S.H. said that "he had already received a citation," and that, "[i]f he received another one, he would lose his license." Officer Camardo focused on getting medical attention there, while "Montgomery PD" responded with three units and found the other youths. One of the other youths was L.L.

{¶5} L.L. testified that he is friends with S.H. and was the front-seat passenger in the vehicle that night. He said they turned right onto Given Road, by the "Playhouse or Schoolhouse," and the officer pulled out behind them and "the officer's red/blue lights turned on." He denied hearing any sirens. He testified, "The lights are activated and [S.H.] floors it." He also said that S.H. turned off his lights. He believed they were going around 70 m.p.h. down Given Road. He was scared and nervous and felt worried. He was telling S.H. to "slow down or stop a lot." Once they reached Sleepy Hollow and were approaching the turn, S.H. turned the lights back on and slowed down. He could hear the tires when S.H. "took the right," and when S.H. "made the left" "it felt like the car lost control." Once the car "hit the grass," they "lost full control," hit the fence, and slid into the lodge. L.L. was diagnosed with "a fractured cartilage in [his] rib cage" and a concussion and was "put in a boot."

**{¶6}** S.H. was charged with "knowingly operat[ing] a motor vehicle so as to willfully elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop," and causing a substantial risk of serious physical harm to persons or property, acts that would constitute the offense of failing to comply with a police officer's order or signal under R.C. 2921.331(B) and (C), a felony in the third-degree, if committed by an adult.[2]

**{¶7}** An adjudicatory hearing was held on November 19, 2024, wherein the above-mentioned evidence was presented. Of relevance here, S.H. argued in his closing argument that venue was never established where neither witness testified that the offense occurred in Hamilton County, Ohio. He claimed, "All we heard was testimony from an Indian Hill Ranger, but we don't know where this offense occurred as far as the county goes." After the State disagreed, the magistrate ordered the parties to submit additional briefing on this issue. The defense brief focused on the fact that the evidence failed to show that Indian Hill or any of the mentioned roads were located in Hamilton County or the State of Ohio. The State argued that Officer Camardo "testified the offenses charged occurred in and around various streets and landmarks within Indian Hill before terminating at the Livingston Lodge." The State further argued that State's exhibit No. S4 listed the address of Livingston Lodge as 9300 Given Road, Cincinnati, Ohio.

**{¶8}** Ultimately, the magistrate adjudicated S.H. delinquent for the charged offense. Of relevance here, the magistrate found that identification of the lodge in State's exhibit No. S4 as being in Cincinnati, Ohio, was sufficient to establish venue.

---

[2] The record indicates that S.H. was also charged with a probationary-license restriction for a minor and improper display of plates/stickers. The magistrate adjudicated S.H. delinquent on both of these charges as well. However, the juvenile court vacated the probationary-license adjudication. Neither of these charges are before this court on appeal.

{¶9}   S.H. objected to the magistrate's decision.  Among other things, he argued that the exhibit establishing the lodge as being in Cincinnati, Ohio, was insufficient to establish venue as "[j]ust because something occurred in 'Cincinnati' does not mean the offense occurred in Hamilton County, State of Ohio."  He asserted, "There are other cities in the United States of America called Cincinnati."  He further asserted, "Even if the mailing address of the offense was Cincinnati, Ohio, that does not equate to Hamilton County," as some Cincinnati addresses are located in Clermont County.

{¶10}   Relevant here, the juvenile court overruled S.H.'s objection as to venue, finding that sufficient circumstantial evidence existed to establish venue.  The court said,

>   Officer Camardo testified that he is employed by the Indian Hill Rangers and described in great detail the locations at which he identified S.H.'s vehicle.   He provided specific street names, intersections, and local landmarks, including: the intersection of Kugler Mill Road and Given Road; the Little Red School House, which he described as having two entrance points on Given Road and Camargo Road; the intersection of Spooky Hollow Road and Given Road; and finally, the Livingston Lodge on Given Road.  Furthermore, the State of Ohio presented Exhibit S-4 which is a photograph from Google Maps of the Livingston Lodge.  The Court believes that the evidence presented is sufficient to establish that the charged offenses occurred within Hamilton County, Ohio.

{¶11}   Thereafter, following the dispositional hearing on June 4, 2025, the magistrate ordered S.H. committed to the custody of the Ohio Department of Youth

7

Services ("DYS"). However, said commitment was suspended and S.H. was placed on "non-reporting probation with Monitored Time as defined in [R.C.] 2929.01(Y)," until attainment of the age of 21 years. The juvenile court approved and adopted the magistrate's dispositional orders, with no objection from S.H.

{¶12} S.H. now appeals, raising a single assignment of error challenging his adjudication as not supported by sufficient evidence and against the manifest weight of the evidence.

## II. *Analysis*

{¶13} Although raising a broad assignment of error challenging his adjudication as against the sufficiency and manifest weight of the evidence, S.H. argues that the state failed to prove venue and therefore the charge should have been dismissed. He claims the only evidence that "could remotely establish venue is that the offense was investigated by the Indian Hill Police Department and it occurred on specific streets," and this is insufficient to establish that the offense occurred in Hamilton County.

{¶14} Venue is not an element of an offense. *State v. Musarra*, 2025-Ohio-5058, ¶ 14-15. Rather, "venue is concerned with *where* an alleged crime was committed." (Emphasis in original.) *Id.* at ¶ 14. In other words, "venue is a fact necessary to show compliance with a defendant's constitutional and statutory rights." *Id.* at ¶ 17. It "is not a fact necessary to show whether an offense has been committed." *Id.* Thus, "[t]ermination of a prosecution based on insufficient evidence of venue is a dismissal, not an acquittal, because it does not resolve whether the defendant committed the charged offense." *Id.* at ¶ 16.

{¶15} "'Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the

defendant.'" *State v. Holloway*, 2025-Ohio-1637, ¶ 15 (1st Dist.), quoting *State v. Draggo*, 65 Ohio St.2d 88, 90 (1981). "The State need not prove venue in express terms so long as it is established by all the facts and circumstances in the case." *Id.*, citing *State v. Headley*, 6 Ohio St.3d 475, 477 (1983), and *State v. Hinkston*, 2015-Ohio-3851, ¶ 11 (1st Dist.); *accord, e.g.*, *State v. Smith*, 2024-Ohio-5030, ¶ 2, citing *Headley* at 477 ("We have long held that although venue must be proved beyond a reasonable doubt, venue 'need not be proved in express terms so long as it is established by all the facts and circumstances in the case.'").

{¶16} "Evidence showing that the offense occurred at a particular street, standing alone, is generally insufficient to prove venue, 'since such addresses are often not "sufficiently unique" to permit the conclusion that the address is located in a particular city or county.'" *Holloway* at ¶ 16, quoting *State v. Lahmann*, 2007-Ohio-1795, ¶ 34 (12th Dist.). "However, a street name in combination with testimony that a certain locality's investigative body was assigned to the alleged crime is sufficient to establish venue." *Id.*, citing *State v. Curry*, 2014-Ohio-3836, ¶ 23 (2d Dist.), and *State v. Shuttlesworth*, 104 Ohio App.3d 281 (7th Dist. 1995).

{¶17} Here, the evidence includes more than just a responding police department and a road name. Here, the evidence presented by the State includes mention of two responding police departments (Indian Hill and Montgomery), several road names that are all in the same area and connect in some manner (Kugler Mill, Given, Camargo, Keller, Spooky Hollow), several landmarks (the Little Red Schoolhouse and the Livingston Lodge), and descriptions of the area ("rural type feel, a lot of trees, no businesses, one hundred percent residential"; forested; no street lights), all of which identify the area in which this incident occurred as Indian Hill. Further, State's exhibit No. S4 identifies the area of the accident on Given Road, which

was at Livingston Lodge, as being located in "Cincinnati, Ohio." Even further, the police report attached to the complaint is from the Indian Hill Rangers, the complaint was file stamped in Hamilton County, and the police report was assigned a Hamilton County case number.

{¶18} In support of his argument that this evidence is insufficient to establish venue, S.H. points to *State v. Sullivan*, 2014-Ohio-3112 (1st Dist.), and *State v. Gardner*, 42 Ohio App.3d 157 (1st Dist. 1987). However, in each of these cases, the State failed to put forth any evidence that the incident occurred in "Cincinnati," and there was no officer testimony establishing a jurisdiction. Here, State's exhibit No. S4 establishes the lodge as being in Cincinnati, and the testifying officer identified himself as an Indian Hill Ranger. The officer further testified that the Montgomery Police Department also responded to the incident.

{¶19} Considering the totality of the evidence in this case, we hold that the evidence was sufficient to circumstantially establish venue in Hamilton County, Ohio. Beyond that, S.H. does not present any other challenge to his adjudication. Therefore, we overrule the assignment of error and affirm S.H.'s delinquency adjudication.

### III. Conclusion

{¶20} For the foregoing reasons, we overrule the assignment of error and affirm the judgment of the juvenile court.

Judgment affirmed.

**NESTOR** and **MOORE, JJ.,** concur.