The STATE of Ohio, Appellee,

v.

MICHAEL, Appellant.

[Cite as *State v. Michael* (1996), 108 Ohio App.3d 285.]

Court of Appeals of Ohio,
Second District, Clark County.

Nos. 95 CA 62, 95 CA 63.

Decided Jan. 10, 1996.

*Douglas M. Rastatter,* Clark County Prosecuting Attorney, for appellee.

*William N. Merrell,* Clark County Public Defender, for appellant.

WOLFF, Judge.

Barbara Michael was found guilty by the Clark County Court of Common Pleas, Domestic Relations Division, Juvenile Section, of two counts of contributing to the unruliness of a child. Michael appeals from both convictions.

The pertinent facts and procedural history, as found in the trial court record, are as follows.

Michael is the maternal grandmother of Rebecca and Brad Huffman. Both children have lived with Michael since birth. During the 1994–1995 school year, Rebecca was a senior at North High School ("NHS") in Springfield. Brad was a

sophomore at the same school. Rebecca and Brad lived with Michael from the beginning of the school year until February, at which time they moved in with their mother. During that time, Rebecca and Brad each missed approximately eighty days of school. Of those eighty absences, only one or two were excused due to illness.

On February 22, 1995, two complaints were filed in the Clark County Juvenile Court against Michael. The complaints were identical in nature, except that one involved Rebecca and the other involved Brad. Michael was charged with contributing to the unruliness of Rebecca and Brad because they had failed to attend school without an excuse.

A bench trial was held on May 12, 1995. The state called Teresa Stephens, an attendance officer at NHS, as its only witness. Stephens testified regarding the attempts NHS had made to notify Michael about Rebecca's and Brad's absenteeism. She testified that a telephone call is made to a student's legal custodian every day that a student is absent from school. The telephone call is made by a machine. The machine keeps calling the absent student's residence until either a person or an answering machine answers the telephone.

On October 27, 1994, NHS sent a letter to Michael's home notifying her about Rebecca's and Brad's excessive absences and that the school needed doctor, dental, court, or counseling statements to excuse those absences. Stephens testified that she did not know if Michael had received the letter.

Stephens also testified that she had spoken to Michael on the telephone at least two times regarding Brad's and Rebecca's absences. When questioned about Michael's response to Rebecca's and Brad's attendance problem, Stephens replied, "She was concerned. She would, you know, get them up and tell them they needed to come to school according to the information she gave me. [S]he would be surprised if they weren't there. * * * [T]here was a general concern that neither one of them were in school."

Michael testified on her own behalf. She testified that she had done everything in her power to see that Rebecca and Brad attended school. She encouraged them to attend school. She told them that if they ever wanted to have a decent life, they had to finish school. With respect to Brad, Michael testified that she would drive him to school with her other son, but that Brad would leave the school after she dropped him off. If she threatened Brad about the consequences of not attending school, he would threaten to run away, as he had done in the past. Michael testified that at times she was physically afraid of Brad. After Michael and Rebecca had an argument regarding Rebecca's absenteeism, Michael threatened to call the police if Rebecca did not start attending school. In response, Rebecca moved in with her boyfriend.

Michael testified that she never failed to respond to NHS about Rebecca's or Brad's absenteeism, nor did she fail to do anything the school asked her to do. It appears that the only thing Michael did not do with respect to Rebecca's and Brad's absenteeism was to file unruliness charges in juvenile court against Rebecca and Brad.

As of Michael's May 12, 1995 bench trial, NHS had been in session approximately one hundred forty days. Of those one hundred forty days, Rebecca had been absent from school one hundred fifteen days and Brad had been absent one hundred six days. It is unclear from the record when Brad moved out of his mother's house but, at the time of the trial, Brad was living with Michael again and had been attending school regularly for a month. Rebecca was still living with her mother. Rebecca turned eighteen years old on April 7, 1995, and had quit attending school entirely.

The court found Michael guilty on both counts of contributing to the unruliness of a child. For each count, the court sentenced Michael to three days in jail, which was suspended, assessed a $25 fine and court costs, and placed Michael on probation until October 15, 1995. A specific term of her probation was that Brad attend NHS on a daily basis or that Michael notify the school if Brad did not attend.

Michael asserts one assignment of error on appeal:

"The trial court committed prejudicial error when it found appellant guilty in that such finding is contrary to law and against the manifest weight of the evidence."

Michael contends that insufficient evidence was presented at trial to support her conviction. Specifically, Michael argues that the state failed to establish beyond a reasonable doubt that some act on her part caused Rebecca's and Brad's unruly behavior.

Where an appellant asserts that the judgment is not supported by the manifest weight of the evidence, the relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Michael was charged with two violations of R.C. 2919.24, which states:

"(A) No person shall do either of the following:

"(1) Aid, abet, induce, cause, encourage, or contribute to a child * * * becoming an unruly child, as defined in section 2151.022 of the Revised Code * * *;

"(2) Act in a way tending to cause a child * * * to become an unruly child, as defined in section 2151.022 of the Revised Code."

One definition of an unruly child is one "who is a habitual truant from school." R.C. 2151.022(B). Although the complaint quotes language from R.C. 2919.24(A)(1) and (2), the judgment of conviction does not specify the specific subsection under which Michael was found guilty. On appeal, the state bases its argument that Michael's conviction should be upheld solely upon R.C. 2919.24(A)(2). Thus, this is the subsection we will address in our analysis.

The state contends that Michael's convictions should be affirmed on the authority of *State v. Wood* (1989), 63 Ohio App.3d 855, 580 N.E.2d 484. In *Wood*, James and Kathleen Wood were charged with violating R.C. 2919.24 because their son did not attend school from September 1, 1986 to April 1, 1987. The Woods had been unable to obtain an exemption from the compulsory education law but continued to keep their son out of school based upon their "superior parental rights in the education of [their] children." *Id.* at 859, 580 N.E.2d at 487. The court held that R.C. 2919.24 imposes strict criminal liability and that, therefore, the Woods' reason for causing their son's truancy was irrelevant. *Id.* at 861, 580 N.E.2d at 488.

*Wood* is distinguishable from this case. In this case, Michael did not affirmatively keep Rebecca and Brad from attending school, either to educate them at home or for any other reason. Rather, Michael affirmatively tried to send Rebecca and Brad to school, *i.e.*, she encouraged them to attend school, she told them they had to attend school, she woke them up in the morning for school, and, on occasion, she even drove Brad to school. Based upon the *Wood* court's holding that R.C. 2919.24 imposes strict liability, the state need not prove culpability in order for a person to be found guilty under the statute. The state still must establish, however, that "a child is absent from school without permission *due to some act of the defendant*." (Emphasis added.) *Id.*

The state argues that "[Michael] certainly acted in a way tending to cause these kids to become unruly when she sat back and did nothing." We recognize that at least one appellate court has construed the language of R.C. 2919.24 as broad enough to include a failure to act, where an affirmative duty to act exists. See *State v. Groves* (June 13, 1994), Fairfield App. No. 51–CA–1993, unreported, 1994 WL 313782. *Groves* is also distinguishable from this case. In *Groves*, Rowena Groves was convicted of contributing to the unruliness of her daughter, Adrienne. Adrienne missed eighty-one and one-half days of school in eighth grade, forty-five days of school the second time through eighth grade, eighty-four and one-half days in ninth grade, and one hundred seven and one-half days in tenth grade. The evidence presented showed that Groves told Adrienne's probation officer that the reason Adrienne was not attending school was because

she stayed up late watching television and could not get out of bed in the morning. It appeared that Groves did not discipline Adrienne for this behavior. There was also evidence that Groves allowed Adrienne to make her own decision regarding whether she would attend school.

The state did not present any evidence in this case that Michael failed to discipline Rebecca or Brad or that she allowed Rebecca and Brad to make their own decision regarding whether they were going to attend school. The only action the state established Michael failed to take was that of filing unruliness charges against Rebecca and Brad in juvenile court.

Here, the evidence did not establish that Michael affirmatively kept Rebecca and Brad home from school as in *Wood, supra,* nor did the evidence establish that Rebecca failed to take steps to ensure that Rebecca and Brad would attend school as in *Groves, supra.* Rather, the evidence established that Michael consistently attempted, albeit unsuccessfully, to ensure that Rebecca and Brad attended school on a regular basis. Viewing the evidence presented at trial in a light most favorable to the prosecution, we cannot say that any rational trier of fact could have found that the state had proven beyond a reasonable doubt that Michael acted in a way tending to cause her grandchildren to become unruly.

The assignment of error is sustained.

The judgment of the trial court will be reversed.

*Judgment reversed.*

FAIN, and FREDERICK N. YOUNG, JJ., concur.