[Cite as *State v. Ruggles*, 2024-Ohio-3128.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-2 |
| | : | |
| v. | : | Trial Court Case No. 2023-E-00004- |
| | : | 01,02,03,04,05 |
| LATRICIA RUGGLES | : | |
| | : | (Appeal from Common Pleas Court- |
| Appellant | : | Juvenile Division) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 16, 2024

. . . . . . . . . . .

MAXWELL D. NEWSOME, Attorney for Appellant

MEGAN A. HAMMOND, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant Latricia Ruggles appeals from her convictions in the Greene County Court of Common Pleas, Juvenile Division, after a jury found her guilty of five counts of contributing to the unruliness of a child in violation of R.C. 2919.24(B)(2). In support of her appeal, Ruggles contends that the complaint charging her with those

counts was defective because it failed to set forth all the essential elements of the charged offense as required by Crim.R. 3. Ruggles claims that such a defect warranted the dismissal of the complaint and that this court should reverse her convictions on that basis. Ruggles also claims that her convictions should be reversed because they were not supported by sufficient evidence and were against the manifest weight of the evidence. Ruggles further claims that a reversal is warranted because the trial court committed prejudicial error by prohibiting the admission of certain testimony about Ruggles's niece on grounds that such testimony was irrelevant. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On August 10, 2023, the State, through the attendance officer of Fairborn City Schools, filed a complaint charging Ruggles with five first-degree-misdemeanor counts of contributing to the unruliness of a child in violation of R.C. 2919.24(B)(2). The complaint alleged that Ruggles had acted in a way tending to cause her teenage Daughter ("Daughter") to become an unruly child during five periods of time between September 2022 and May 2023. Under each of the five counts, the complaint alleged that Ruggles had failed to ensure that Daughter attended the public school at which she was enrolled and that Daughter had been absent from school without excuse for either 30 or more hours in a week or 42 hours in a month.

{¶ 3} After being served with the complaint, on August 25, 2023, Ruggles had counsel appear on her behalf and file a motion to dismiss the complaint on grounds of

selective prosecution. On September 21, 2023, the trial court overruled Ruggles's motion to dismiss.

{¶ 4} On September 27, 2023, Ruggles filed a second motion to dismiss the complaint in which Ruggles argued, among other things, that the complaint was defective because it failed to include a written statement of the essential facts constituting the charged offense as required by Crim.R. 3. On October 23, 2023, the trial court issued a decision overruling Ruggles's second motion to dismiss. Although the trial court overruled the motion, it found that the time period of the conduct alleged under Count One of the complaint, i.e., September 15, 2022, through December 8, 2022, partially overlapped with conduct alleged in a separate case against Ruggles that had been dismissed with prejudice. As a result, the trial court narrowed the time period alleged in Count One to November 18, 2022, through December 8, 2022.

{¶ 5} Ruggles's case thereafter proceeded to a two-day jury trial. During trial, the State presented testimony from the Greene County Juvenile Court diversion counselor who was assigned to Ruggles's case. The State also presented testimony from various school officials and staff members, including the attendance officer of Fairborn City Schools, the assistant principal at Fairborn High School, the attendance and main-office secretaries at Fairborn High School, and Daughter's history teacher. In her defense, Ruggles presented testimony from two Fairborn police officers who had assisted her with Daughter. Ruggles also presented testimony from her husband, Claudio; her long-time friend, Jamie; her teenage niece that lived with her and went to school with Daughter; and Daughter. The following is a summary of the relevant information that was presented at

trial.

{¶ 6} In January 2022, Ruggles enrolled Daughter, who was then 14 years old, at Fairborn High School when Daughter was in the ninth grade. On May 20, 2022, the attendance officer of Fairborn City Schools sent Ruggles a "Habitually Truant Notice" advising her that Daughter had been absent from school without legitimate excuse for either 30 or more consecutive hours, 42 or more hours in one school month, or 72 hours during the school year. State's Exhibit 1, p. 94. There is no dispute that if a student meets any of the foregoing criteria, the student is considered a "habitual truant" pursuant to R.C. 2151.011(B)(18).

{¶ 7} The "Habitually Truant Notice" stated that, because Daughter had met the threshold for becoming a habitual truant within 21 school days prior to the last day of the 2021-2022 school year, the school was going to schedule an absence intervention meeting to occur sometime after the start of the 2022-2023 school year. The notice requested that Ruggles participate in the meeting and advised that the meeting would involve discussing Daughter's attendance with a school official and forming an absence intervention plan. The notice further advised that if the interventions were unsuccessful, or if more unexcused absences were accumulated after implementing the plan, the school would have to file a complaint with the Greene County Juvenile Court.

{¶ 8} On August 24, 2023, Ruggles attended an absence intervention meeting with Fairborn High School's assistant principal and guidance counselor. Ruggles attended the meeting via an online video conference call service known as Google Meet. During the meeting, Ruggles indicated that Daughter's absences were due to the loss of her

grandmother, hospital visits, missing the bus, and adjusting to a new school and schedule. After discussing the reasons for Daughter's absences, the parties developed an absence intervention plan. The plan included Daughter attending school daily and communicating and reporting absences to the school. The plan also consisted of the school monitoring Daughter's attendance as well as providing any support and/or resources needed to help Daughter maintain good attendance. State's Exhibit 1, p. 102.

{¶ 9} Although the absence intervention plan went into effect on September 6, 2022, Daughter's attendance did not improve. The State presented records establishing that the school sent Ruggles several written notices of excessive absences and habitual truancy pertaining to Daughter throughout the 2022-2023 school year. Specifically, the school sent notices of excessive absences to Ruggles on October 31, 2022; November 8, 2022; February 16, 2023; March 23, 2023; April 14, 2023; and May 16, 2023. State's Exhibit 1, p. 123-129. In addition, the school sent notices of habitual truancy to Ruggles on November 21, 2022; February 16, 2023; March 23, 2023; April 10, 2023; April 18, 2023; May 23, 2023; and May 25, 2023. *Id.*

{¶ 10} The records presented by the State also established that the school tried to call Ruggles on November 28, and 30, 2022, to discuss Daughter's habitual truancy, and that Ruggles hung up on both occasions. *Id.* at 125-126. In addition, the records established that on November 28, 2022, the school sent Ruggles an e-mail invitation to participate in a second absence intervention meeting, which the assistant principal indicated that Ruggles did not attend.

{¶ 11} Daughter's history teacher also contacted Ruggles several times via e-mail

and text messages and voiced concerns about Daughter's poor attendance. Despite the history teacher's setting up a telephone parent-teacher conference around Ruggles's work schedule, Ruggles failed to attend the conference. As a result, the history teacher testified that she never had the opportunity to discuss the reasons for Daughter's absences with Ruggles.

{¶ 12} Given the lack of improvement in Daughter's attendance, a third absence intervention meeting was scheduled for February 23, 2023, which Ruggles did not attend. The assistant principal testified that she called Ruggles and left her a voice message on February 16, 2023, to schedule the absence intervention meeting, and that Ruggles responded the same day with a voice message stating that she refused to participate in the meeting. The assistant principal testified that Ruggles also left a second voice message an hour later stating that she was not being notified of her Daughter's absences because the school was using the wrong phone number to contact her.

{¶ 13} The attendance secretaries at Fairborn High School testified that the school uses an automated phone system that initiates calls to parents at 9:15 a.m. to notify them when their child is marked absent from school. The secretaries explained that the automated system calls the primary phone number listed on a child's emergency contact and health information form—a form that is completed by parents at the time their child is enrolled with the school. The secretaries' testimony established that only parents can update the primary phone number listed on the emergency contact form, and that Ruggles had updated Daughter's form on October 6, 2022.

{¶ 14} The State presented a call sheet that the attendance secretaries identified

as the record of automated calls made to Ruggles when Daughter was marked absent from school. State's Exhibit 1, p. 133-139. The call sheet showed that, during the relevant time periods, the automated phone system called Ruggles multiple times each day her Daughter was marked absent from school, with the exception of two days— November 18, 2022, and April 14, 2023. The call sheet showed that out of 45 full-day, unexcused absences that Daughter had during the relevant time periods, Ruggles was successfully reached for 35 of those absences using the primary phone number listed on Daughter's emergency contact form. The call sheet also showed that Ruggles had received a voice message for six of the absences, was not successfully reached for two of the absences, and, as previously discussed, received no call for two of the absences. Although Ruggles had been reached a majority of the time, the attendance secretaries did not recall Ruggles ever calling the office to give an excuse for Daughter's absences.

{¶ 15} Due to Daughter's continued unexcused absences, the attendance officer of Fairborn City Schools filed a complaint against Ruggles in the Greene County Juvenile Court. As previously discussed, the complaint alleged five counts of contributing to the unruliness of a child in violation of R.C. 2919.24(B)(2), with each count relating to a specific time frame during the 2022-2023 school year. The State presented records establishing that Daughter had had a total of 45 full-day, unexcused absences during the time frames alleged in the complaint and 56 full-day, unexcused absences during the entire 2022-2023 school year. State's Exhibit 1, p. 117-121. Daughter also had four unexcused partial absences and five unexcused tardies during the school year. The following table shows the number and timing of Daughter's full-day, unexcused absences

in relation to each count of the complaint.

| Count One | November 18, 2022 – December 8, 2022 (as amended by the trial court) | 2 full-day absences (12 hours)[1] |
|---|---|---|
| Count Two | February 3, 2023 – February 23, 2023 | 8 full-day absences (48 hours) |
| Count Three | March 2, 2023 – March 24, 2023 | 9 full-day absences (54 hours) |
| Count Four | April 3, 2023 – April 28, 2023 | 13 full-day absences (78 hours) |
| Count Five | May 2, 2023 – May 26, 2023 | 13 full-day absences (78 hours) |

**{¶ 16}** The complaint against Ruggles was referred to the Greene County Juvenile Court's Diversion Program, and the matter was thereafter scheduled for an informal diversion hearing with the court's diversion counselor. The purpose of the diversion hearing was to try and resolve Daughter's attendance issues before the matter was officially submitted to the juvenile court. On May 11, 2023, Ruggles and the assistant principal appeared at court for the diversion hearing. The diversion counselor testified regarding the hearing and stated that Ruggles complained that the school was not doing a good job of notifying her when Daughter was absent from school. Ruggles also claimed that Daughter was being marked absent for full days when they were only half-

---

[1] The assistant principal provided testimony indicating that a school day is six hours long. *See* Trial Tr., p. 151.

day absences. In addition, the diversion counselor testified that Ruggles was upset about the complaint being filed against her and decided to contest the complaint as opposed to utilizing the court's Diversion Program. As a result, the diversion counselor officially submitted the complaint to the Greene County Juvenile Court.

{¶ 17} The assistant principal testified that Ruggles had claimed that a barrier to Daughter's attendance at school was that she (Ruggles) worked from 10 a.m. to 10 p.m., and that her husband got Daughter up in the morning but could not guarantee Daughter got on the school bus because he had to leave for work. During his testimony, Ruggles's husband, Claudio, confirmed that Ruggles worked from 10 a.m. to 10 p.m. He also testified that Ruggles worked from home. In addition, he testified that Ruggles suffered from back issues and that Ruggles had fallen and injured her ankle sometime during the fall of 2022. According to Claudio, Ruggles's ankle injury required her to be on crutches for a month. Claudio also claimed that Ruggles had to "[wear] something to help her walk." Trial Tr., p. 122, 124. When asked whether Ruggles was allowed to drive after her ankle injury, Claudio testified that did not know whether Ruggles's doctor had told her not to drive.

{¶ 18} Claudio also testified that between September 2022 and May 2023, he was the person who always woke up Daughter in the mornings. He testified that Daughter's school bus arrived around 6:30 a.m. and that he did not know whether Daughter made it on the bus since he had to leave for work before that time. He also testified that once he woke up Daughter, it was Daughter's responsibility to get up and go to school. However, Claudio's testimony indicated that Daughter did not always respond when he

woke her up. When asked if there were any other ways for Daughter to wake up other than him, Claudio testified that Daughter had an Alexa alarm. Claudio also indirectly indicated that Ruggles was asleep during the time Daughter was supposed to wake up for school. Claudio testified that Ruggles "works from 10:00 a.m. to 10:00 p.m. and, you know, she has a back issue, she has some medical issues. She gets home tired. So my compromise, at least, is that I will get them up in the mornings." Trial Tr., p. 120.

{¶ 19} Ruggles's 17-year-old niece, who lived with Ruggles and went to school with Daughter, testified that Claudio was the person who woke her and Daughter up in the mornings. Ruggles's niece also testified that Ruggles would sometimes wake her and Daughter up, but not every day. Ruggles's niece testified that if she (the niece) missed the bus, she would either call an Uber driver to come pick her up while Ruggles was sleeping or she would go and tell Ruggles that she had missed the bus. Ruggles's niece testified that when she told Ruggles that she had missed the bus, Ruggles would sometimes call and have the bus come back and pick her up. Ruggles's niece, however, testified that she did not typically miss the bus. Ruggles's niece also did not indicate whether Ruggles ever called the bus back for Daughter.

{¶ 20} Daughter testified that either Claudio or her Alexa alarm would wake her up on school mornings. Daughter's testimony and the testimony of Ruggles's niece indicated that Daughter would miss the bus either because Daughter did not wake up or because she would sneak back into her house after initially going out to the bus stop. Daughter testified that Ruggles would be sleeping when she snuck back into the house and would not hear her return. Daughter claimed that once she was back inside the

house, she would hide in her room or the basement and fall asleep. Ruggles's niece testified that Ruggles would sometimes lock Daughter out of the house if she caught Daughter trying to sneak back inside. Daughter testified that on the occasions when she would arrive late at school after missing the bus, she would not always notify the school of her presence by signing in at the office. Daughter also testified that she would sometimes leave school and go to Starbucks and Kroger.

{¶ 21} Ruggles's long-time friend, Jamie, testified that Ruggles woke Daughter up every single morning. However, on cross-examination, Jamie clarified that Ruggles did so using Alexa alarms and Claudio. Jamie testified that she would occasionally stay overnight at Ruggles's residence and observe Ruggles go upstairs to wake up Daughter in the morning. Jamie clarified, however, that she observed this before Ruggles hurt her ankle during the 2022-2023 school year. According to Jamie, that injury prevented Ruggles from going upstairs to see if Daughter was still at home and from driving Daughter to school. Jamie also testified that Ruggles had ongoing car trouble that prevented Ruggles from driving Daughter to school. Jamie testified that Ruggles's car trouble began around April 2022 and was resolved around March 2023. Daughter and Ruggles's niece also testified that Ruggles did not have reliable transportation during the 2022-2023 school year. Ruggles's niece testified that their vehicle was fixed just a week before trial. Jamie testified that during Ruggles's injury and car trouble, she would give Ruggles rides "a lot of different times for different things whenever she needed me." Trial Tr., p. 270.

{¶ 22} When asked what efforts Ruggles made to get Daughter to go to school,

Jamie testified that Ruggles set Alexa alarms for Daughter and would try to bribe Daughter to go to school by buying her new clothes. However, Jamie did not know whether Ruggles ever made any arrangements or efforts to get Daughter to school when Daughter missed the bus. Ruggles's niece testified that Ruggles would give Daughter spending money to go to school but would also take away Daughter's phone or ground Daughter as punishment for missing school. Daughter similarly testified that Ruggles would ground her, give her a "whipping," and take her phone away as punishment for missing school. Trial Tr., p. 303. Daughter also claimed that Ruggles would plead with her to go to school and would tell Ruggles's niece to make sure that she (Daughter) woke up and got on the bus. Daughter also claimed that Ruggles called the police on her when she ran away after refusing to go to school. The defense presented brief testimony from two police officers who confirmed that they had responded to a call about Daughter on October 18, 2022.

{¶ 23} After considering the testimony and exhibits presented at trial, the jury found Ruggles guilty of all five counts of contributing to the unruliness of a child that were alleged in the State's complaint. At sentencing, the trial court imposed a six-month jail term for each of the five counts. The trial court, however, suspended the jail terms for Counts One, Two, Three, and Four, and all but 60 days of the jail-term imposed for Count Five. The trial court ordered the resulting 60-day jail term to be served by Ruggles on weekends beginning November 17, 2023. The trial court also ordered Ruggles to pay $80 in court costs, $469.51 in subpoena fees, and a $150 fine for each count with $100 suspended on the condition that Daughter attend school as required by law. The trial court further

ordered Ruggles to complete a parenting class and to ensure that Daughter attends school every day on time.

{¶ 24} Ruggles appeals from her convictions, raising four assignments of error for review.

**First Assignment of Error**

{¶ 25} Under her first assignment of error, Ruggles contends that the trial court erred by overruling her second motion to dismiss the State's complaint. Ruggles claims that the complaint was invalid and should have been dismissed because it failed to set forth all the essential elements of contributing to the unruliness of a child under R.C. 2919.24(B)(2). We disagree.

{¶ 26} As a preliminary matter, we note that an appellate court reviews a trial court's decision on a motion to dismiss a complaint de novo. *State v. Fields*, 2017-Ohio-400, ¶ 19 (2d Dist.); *State v. Miles*, 2018-Ohio-4444, ¶ 7 (2d Dist.). " 'De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination.' " *Fields* at ¶ 19, quoting *State v. Clay*, 2016-Ohio-424, ¶ 5 (2d Dist.).

{¶ 27} The purpose of a complaint is to give the accused adequate notice of the crime charged. *Fields* at ¶ 17. Crim.R. 3 governs the requirements of a valid complaint in Ohio and provides, in relevant part, that a complaint must contain "the essential facts constituting the offense charged." Crim.R. 3; *State v. Sampson*, 2008-Ohio-775, ¶ 10 (2d Dist.). Ohio courts have uniformly held that the phrase "essential facts constituting

the offense charged" means "those facts which the State must prove in order to obtain a conviction, i.e., the essential elements of the crime charged." *State v. Wheeler*, 2017-Ohio-1200, ¶ 7 (2d Dist.), citing *Sampson* at ¶ 10. "Therefore, a complaint must contain the essential elements of the crime charged." (Citations omitted.) *Sampson* at ¶ 10.

{¶ 28} A complaint that alleges an offense in the language of the statute on which the offense is based is sufficient to satisfy the essential-elements requirement in Crim.R. 3. *State v. Gerding*, 1998 WL 666950, *2 (6th Dist. Sept. 30, 1998), citing *State v. Broughton*, 51 Ohio App.3d 10, 11 (12th Dist. 1988); *accord Wheeler* at ¶ 7 ("[g]enerally, the requirements of a complaint or indictment may be met by reciting the language of the criminal statute"), citing *State v. Childs*, 88 Ohio St.3d 194, 199 (2000), citing *State v. Murphy*, 65 Ohio St.3d 554, 583 (1992). "It is well-settled under Ohio law that a charging instrument affords adequate notice to the accused if it tracks the language of the statute." (Citation omitted.) *State v. Santos*, 2020-Ohio-1043, ¶ 39 (2d Dist.). A "complaint that does not set forth all of the essential elements of the crime [however] is invalid." *Wheeler* at ¶ 7, citing *Sampson* at ¶ 9, citing *State v. Cimpritz*, 158 Ohio St. 490 (1953).

{¶ 29} As previously discussed, Ruggles contends that the State's complaint was invalid and should have been dismissed because it did not contain all the essential elements of contributing to the unruliness of a child under R.C. 2919.24(B)(2). Pursuant to that statute: "No person, including a parent, guardian, or other custodian of a child, shall . . . [a]ct in a way tending to cause a child or a ward of the juvenile court to become an unruly child or a delinquent child[.]" R.C. 2919.24(B)(2). An "unruly child" includes "[a]ny child who is a habitual truant from school[.]" R.C. 2151.022(B). A "habitual

truant" is defined as "any child of compulsory school age who is absent without legitimate excuse for absence from the public school the child is supposed to attend for thirty or more consecutive hours, forty-two or more hours in one school month, or seventy-two or more hours in a school year." R.C. 2151.011(B)(18).

{¶ 30} Ruggles claims that the State's complaint failed to allege that she had affirmatively acted in a way tending to cause Daughter to become an unruly child. However, the record establishes that such an allegation was made within the complaint. The complaint specifically alleged that Ruggles "did act in a way tending to cause a child or a ward of the juvenile court, [Daughter], . . . to become an unruly child[.]" Complaint. More specifically, the complaint alleged that, during five specific periods of time, Ruggles "failed to ensure that [Daughter] attended the public school for which she was enrolled" and that Daughter "was absent without legitimate excuse for more than 30 hours in a week or 42 [hours] in a month period." *Id.* The complaint also alleged that Ruggles failed to participate in developing two absence intervention plans from November 30, 2022, and February 23, 2023. We find that the foregoing language in the complaint tracked the language of R.C. 2919.24(B)(2) and sufficiently alleged that Ruggles acted in a way tending to cause Daughter to become an unruly child. Accordingly, Ruggles's argument to the contrary lacks merit.

{¶ 31} Ruggles also argues that the State's complaint failed to allege the applicable culpable mental state of recklessness. We note that recklessness "is the catchall culpable mental state for criminal statutes that fail to mention any degree of culpability, except for strict liability statutes, where the accused's mental state is

irrelevant." *State v. Lozier*, 2004-Ohio-732, ¶ 21. The Supreme Court of Ohio has explained that: "An indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state." (Citations omitted.) *State v. Horner*, 2010-Ohio-3830, paragraph one of the syllabus; *accord State v. Lang*, 2011-Ohio-4215, ¶ 36-37, and *State v. Curry*, 2014-Ohio-3836, ¶ 57 (2d Dist.).

{¶ 32} As previously discussed, the State's complaint tracked the language of R.C. 2919.24(B)(2), a statute which does not specify a culpable mental state. Therefore, the omission of the applicable culpable mental state of recklessness in the complaint did not constitute a defect. *See Curry* at ¶ 57. Accordingly, Ruggles's argument that the State's complaint was invalid for failing to allege recklessness as an element of contributing to the unruliness of a minor under R.C. 2919.24(B)(2) lacks merit.

{¶ 33} Ruggles's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 34} Under her second assignment of error, Ruggles contends that the evidence presented at trial was insufficient to support her five convictions for contributing to the unruliness of a child under R.C. 2919.24(B)(2). We disagree.

*Standard of Review*

{¶ 35} "A sufficiency of the evidence argument disputes whether the State has

presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 36} When reviewing a general challenge to the sufficiency of the evidence, as we are here, "we consider all of the evidence admitted at trial, regardless of the proponent of the evidence[.]" *State v. Harris*, 2023-Ohio-648, ¶ 33 (2d Dist.). Therefore, "[e]vidence supporting the sufficiency of the evidence may be introduced during the defense's case-in-chief." *Id.,* citing *State v. Stokes*, 2016-Ohio-612, ¶ 26 (2d Dist.), citing *State v. Richardson*, 2015-Ohio-757, ¶ 22 (2d Dist.), *reversed on other grounds by* 2016-Ohio-8448.

*Contributing to the Unruliness of a Child*

{¶ 37} A person, including a parent or guardian, commits the offense of contributing to the unruliness of a child in violation of R.C. 2919.24(B)(2) when he or she "[a]ct[s] in a way tending to cause a child or a ward of the juvenile court to become an unruly child or a delinquent child." R.C. 2919.24(B)(2). An "unruly child" includes "[a]ny

child who is a habitual truant from school[.]" R.C. 2151.022(B). " 'Habitual truant' means any child of compulsory school age who is absent without legitimate excuse for absence from the public school the child is supposed to attend for thirty or more consecutive hours, forty-two or more hours in one school month, or seventy-two or more hours in a school year." R.C. 2151.011(B)(18).

{¶ 38} As previously discussed, " '[t]he culpable mental state of "recklessness" applies to the offense of contributing to the unruliness of a minor.' " *State v. Vertrees*, 2021-Ohio-1239, ¶ 20 (3d Dist.), quoting *State v. Middleton*, 2013-Ohio-1848, ¶ 9 (12th Dist.), citing *State v. Moody*, 2004-Ohio-6395, syllabus; a*ccord State v. Lewis*, 2017-Ohio-9311, ¶ 18 (2d Dist.). A person is reckless with respect to circumstances "when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶ 39} The State's complaint against Ruggles alleged that Ruggles had acted in way tending to cause Daughter to be an unruly child/habitual truant during five periods of time, i.e., November 18, 2022, through December 8, 2022 (Count One as amended by the trial court); February 3, 2023, through February 23, 2023, (Count Two); March 2, 2023, through March 24, 2023, (Count Three); April 3, 2023, through April 28, 2023 (Count Four), and May 5, 2023, through May 26, 2023 (Count Five). Therefore, to be convicted of each count, the evidence presented at trial had to establish that, during each of those time periods, Ruggles recklessly acted in a way tending to cause Daughter to become a habitual truant.

**{¶ 40}** When it is alleged that a defendant acted in a way tending to cause a child to become a habitual truant, to be found guilty under R.C. 2919.24(B)(2), the State must establish that " 'a child is absent from school without permission *due to some act of the defendant.*' " (Emphasis in original.) *State v. Michael*, 108 Ohio App.3d 285, 289 (2d Dist. 1996), quoting *State v. Wood*, 63 Ohio App.3d 855 (6th Dist. 1989), *abrogated on other grounds by Moody*, 2004-Ohio-6395. However, this court has recognized that the language of R.C. 2919.24(B)(2) has been construed as broad enough to include a defendant's failure to act, where an affirmative duty to act exists. *Id.*, citing *State v. Groves,* 1994 WL 313782, *1 (5th Dist. June 13, 1994). For example, in *Vertrees*, the Third District Court of Appeals held that a defendant's conviction for contributing to the unruliness of a child was supported by sufficient evidence where the evidence established that the defendant disregarded her responsibility to report her child's absences from school and failed to report the absences even though she was aware of her responsibility to do so. *Vertrees* at ¶ 26.

**{¶ 41}** In *State v. Schnebeli*, 2019-Ohio-860 (5th Dist.), the Fifth District Court of Appeals upheld a conviction for contributing to the unruliness of a child where the defendant testified that her ten-year-old son was a sensitive child who would not go to school because a teacher had embarrassed him. *Id.* at ¶ 11. Although the defendant testified that she had asked to have her son placed in a different class, the evidence established that the matter was never resolved because the defendant never met with her son's teacher. *Id.*

**{¶ 42}** The evidence in *Schnebeli* also established that there was a school bus

available to take defendant's son to school, but that son frequently missed the bus because he disliked the crowd and the noise of the bus. *Id.* The evidence further established that the defendant did not work during the relevant timeframe and had her own means of transportation to get her son to school. *Id.* In addition, the son's attendance did not improve after a state attendance officer provided the defendant with an absence intervention plan and went over the plan with her. *Id.* at ¶ 5. The evidence also established that the defendant missed a scheduled absence intervention meeting because she claimed that she had never received a letter or phone call advising her of the meeting. *Id.* at ¶ 12.

{¶ 43} The defendant in *Schnebeli* testified that she had tried grounding her son and taking away his video games as punishment for his not attending school. She also testified that she went to juvenile court to file unruly charges against her son but ended up not filing any charges. *Id.* The defendant further testified that she considered sending her son to a school counselor, but she ultimately decided against it because counseling had not worked for her older child. *Id.*

{¶ 44} Based on the foregoing evidence, the Fifth District in *Schnebeli* found that there was sufficient evidence supporting the defendant's conviction for contributing to the unruliness of a child. The court reached this conclusion because it found the evidence established that the defendant sought no outside help and enabled behavior that led to her son's missing 42 hours of school in one month without excuse. *Id.* at ¶ 16-27.

{¶ 45} In contrast, in *Michael*, 108 Ohio App.3d 285, this court found insufficient evidence of contributing to the unruliness of a child where the evidence established that

the defendant affirmatively had tried to send her two grandchildren to school by encouraging them to attend school, telling them they had to attend school, waking them up in the morning for school, and, on occasion, driving one of them to school. *Id.* at 287, 289. In so holding, we explained that the evidence did not establish that the defendant affirmatively kept her grandchildren home from school or failed to take steps to ensure that her grandchildren would attend school. *Id.* at 290. We also explained that the evidence did not establish that defendant had failed to discipline her grandchildren for not attending school. *Id.* Because the evidence in *Michael* established that the defendant had consistently attempted, albeit unsuccessfully, to ensure that her grandchildren attended school on a regular basis, we could not say that a rational trier of fact could have concluded that the State had proven beyond a reasonable doubt that the defendant had acted in a way tending to cause her grandchildren to become unruly. *Id.*

*Sufficiency Analysis*

**{¶ 46}** Upon review, we find that the evidence presented in this case was more akin to the evidence presented in *Schnebeli* than *Michael*. In this case, both the State and the defense presented evidence establishing that a significant barrier to Daughter's attending school during the 2022-2023 school year was her missing the bus in the mornings. The evidence indicated that Daughter would miss the bus either because she did not wake up or because she would sneak back into her house and hide after she initially went out to the bus stop. The evidence also indicated that Daughter would sometimes fail to sign in at school when she arrived late after missing the bus and would

sometimes leave school and go to Starbucks or Kroger.

{¶ 47} We find it significant that there was evidence establishing that Ruggles's husband, Claudio, was the person who always woke Daughter up in the mornings for school. We also find it significant that there was evidence establishing that Ruggles was asleep during the time that Daughter had to wake up for school, and that Ruggles worked from home between 10 a.m. and 10 p.m. Daughter specifically testified that Ruggles would be asleep and not hear her when she would sneak back into her house from the bus stop. The testimony of Daughter and Ruggles's niece indicated that Daughter's conduct of sleeping in and/or sneaking back home from the bus stop were regular occurrences during the 2022-2023 school year. Although Ruggles's niece testified that Ruggles would sometimes catch Daughter trying to sneak back into the house, the niece testified that, on those occasions, Ruggles would lock Daughter out of the house, a response that was not conducive to getting Daughter to school on time. In addition, Daughter provided testimony indicating that Ruggles put the onus on her niece to make sure that Daughter woke up and went to school.

{¶ 48} It is also significant that the evidence established that Ruggles was aware of Daughter's ongoing unexcused absences throughout the 2022-2023 school year. The State presented testimony and records establishing that the school sent Ruggles several written notices and e-mails and made multiple phone calls to Ruggles about Daughter's unexcused absences and habitual truancy. Despite Ruggles having notice of Daughter's ongoing attendance issues, and despite Ruggles being at home and available in the mornings to ensure that Daughter either got on the bus or had some alternate means of

transportation to school, the evidence established that Daughter's attendance issues continued throughout the 2022-2023 school year and got progressively worse. Although there was evidence indicating that Ruggles had had car trouble and an ankle injury that prohibited her from driving Daughter to school for a period of time, there was also evidence of alternate forms of transportation that Ruggles could have used to get Daughter to school. For example, the evidence indicated that Ruggles could have called an Uber driver, requested a ride from her friend Jamie, or called the bus back like she did for her niece.

{¶ 49} When viewing the aforementioned evidence in a light most favorable to the State, a rational factfinder could have concluded that, during the 2022-2023 school year, Ruggles's failure to monitor Daughter's whereabouts in the mornings and failure to ensure that Daughter either got on the bus or had some alternate means of transportation to school was conduct that tended to cause Daughter to become a habitual truant. Therefore, a reasonable factfinder could have reached a similar conclusion as in *Schnebeli* and found that Ruggles's conduct in the mornings enabled Daughter's ongoing attendance problem. While Ruggles's hands may have been tied with regard to Daughter's skipping school once she arrived on school grounds, the evidence indicated that Daughter's conduct of sleeping in and sneaking home from the bus stop were regular occurrences that led to Daughter either missing school completely or arriving late to school and not being accounted for due to not signing in with the office.

{¶ 50} There was also evidence indicating that Ruggles failed to utilize resources that were offered by the school and court to help with Daughter's attendance problem.

Specifically, Ruggles failed to participate in absence intervention plan meetings, failed to attend a parent-teacher conference, and declined assistance from the Greene County Juvenile Court's Diversion Program. Because the evidence established that Daughter's unexcused absences continued in full force after these failures, a rational factfinder could have concluded that they also contributed to Daughter's becoming a habitual truant.

{¶ 51} Considering that Daughter had 56 full-day, unexcused absences throughout the entire school year, 45 of which occurred during the specific time periods alleged in the complaint, and considering the evidence of Ruggles's conduct throughout the 2022-2023 school year, i.e., her failure to monitor Daughter's whereabouts in the mornings, failure to ensure that Daughter either got on the bus or had some alternate means of transportation to school, and failure to utilize school and court resources to address Daughter's attendance problem, a rational factfinder could have concluded that all five counts were supported by sufficient evidence. That is, when viewed in a light most favorable to the State, a rational factfinder could have concluded from the evidence that Ruggles disregarded a substantial and unjustifiable risk that she was acting in a way tending to cause Daughter to become an unruly child/habitual truant during the time periods in question.

{¶ 52} We note that the fact that the time frame alleged under Count One only encompassed two full-day absences, which did not meet the definition of a habitual truant under R.C. 2151.011(B)(18), did not prohibit Ruggles from being guilty of that count. This is because a child's status as an unruly child/habitual truant is not an element of the offense of "tending to cause" unruliness under R.C. 2919.24(B)(2). *See State v.*

*Andriola*, 70 Ohio App.3d 69, 71 (1st Dist. 1990), citing former R.C. 2919.24(A)(2) and *State v. Gans*, 168 Ohio St. 174 (1958), paragraph one of the syllabus; *accord Schnebeli*, 2019-Ohio-860, at ¶ 22-26; *State v. Stiles*, 2019-Ohio-3852, ¶ 26-27 (5th Dist.); *In re Hamblin*, 2014-Ohio-3289, ¶ 15 (12th Dist.); *State v. Kindle*, 2003-Ohio-302, ¶ 11 (3d Dist.).   That is, the question is not whether there was sufficient evidence to establish that Daughter was an unruly child/habitual truant between November 18, 2022, and December 8, 2022, but instead whether the State produced sufficient evidence to show that, during that time period, Ruggles acted in a manner that would tend to cause Daughter to become an unruly child/habitual truant.   *See Schnebeli* at ¶ 26.

{¶ 53} Here, the time frame of Count One only encompassed 13 school days due to Thanksgiving Break, meaning that Daughter missed two out of 13 school days.   The evidence established that before those two absences, Daughter had already accumulated 10 full-day, unexcused absences, one unexcused partial absence, and one unexcused tardy during the 2022-2023 school year.   State's Exhibit 1, p. 120-121.   Because the evidence established that Daughter continued to have full-day absences during the November/December time frame, a rational factfinder could have concluded that Ruggles's aforementioned failure to monitor Daughter in the mornings, failure to ensure that Daughter got on the bus or had alternate transportation to school, and failure to utilize school resources continued throughout the November/December time frame and tended to cause Daughter to become a habitual truant.   In other words, there was enough evidence of contributory conduct prior to and during the November/December time frame to allowed a reasonable factfinder to conclude that Ruggles had acted in a way tending

to cause Daughter to become a habitual truant under Count One.

{¶ 54} Ruggles's second assignment of error is overruled.


**Third Assignment of Error**

{¶ 55} Under her third assignment of error, Ruggles contends that all of her convictions for contributing to the unruliness of a child were against the manifest weight of the evidence.   We disagree.

{¶ 56} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive."   (Citation omitted.)   *Wilson*, 2009-Ohio-525, at ¶ 12 (2d Dist.). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "   *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).   A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances.   *Martin* at 175.   "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence."   *State v. Adams*, 2014-Ohio-3432, ¶ 24 (2d Dist.), citing *Wilson* at ¶ 14.

{¶ 57} "In reaching its verdict, the jury was free to believe all, part, or none of each

witness's testimony." (Citation omitted.) *State v. Baker*, 2024-Ohio-2550, ¶ 44 (2d Dist.). For example, the jury was free to disbelieve the testimony of Ruggles's niece and her friend, Jamie, indicating that Ruggles would sometimes wake Daughter up in the mornings or that Ruggles's ankle injury prevented her from going upstairs to check on Daughter and from driving Daughter to school. The jury could have discredited that testimony since Daughter and Ruggles's husband, Claudio, testified that Claudio was always the person who woke Daughter up in the mornings. The jury also could have discredited that testimony because Claudio testified that he did not know whether Ruggles's doctor had told Ruggles not to drive as a result of her ankle injury and never indicated that Ruggles's injury prevented her from going upstairs to check on Daughter.

{¶ 58} The jury was also free to disbelieve the testimony that Ruggles had car trouble. Even if the jury credited the car trouble testimony, the evidence still indicated that Ruggles failed to wake up in the mornings and make sure that Daughter got on the school bus. The jury was also free to disbelieve the testimony indicating that Ruggles encouraged Daughter to go to school and disciplined Daughter when she failed to attend.

{¶ 59} After reviewing the entire record, weighing all the evidence and reasonable inferences, and considering witness credibility, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice by finding Ruggles guilty of all five counts of contributing to the unruliness of a child. The weight of the evidence, particularly the evidence indicating that Ruggles failed to monitor Daughter's whereabouts in the mornings and failed to ensure that Daughter either got on the bus or had some alternate means of transportation to school during the 2022-2023 year, supported the

jury's verdicts finding her guilty of contributing to the unruliness of a child. Accordingly, Ruggles's convictions were not against the manifest weight of the evidence.

{¶ 60} Ruggles's third assignment of error is overruled.


**Fourth Assignment of Error**

{¶ 61} Under her fourth assignment of error, Ruggles contends that the trial court committed prejudicial error by prohibiting the admission of certain testimony by Ruggles's niece. Specifically, Ruggles takes issue with the trial court's prohibiting Ruggles's friend Jamie from testifying about what efforts Ruggles had made to ensure that Ruggles's niece attended school. The trial court prohibited such testimony on grounds that it was irrelevant because Ruggles's niece was not the subject of the charged offenses. The trial court also found that such testimony could confuse the jurors and cause them to improperly consider efforts that Ruggles took with her niece when deciding the case.

{¶ 62} " ' The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *State v. Jali*, 2020-Ohio-208, ¶ 39 (2d Dist.), quoting *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). Accordingly, we review a trial court's decision on that matter for an abuse of discretion. *Id*. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 2013-Ohio-966, ¶ 34. "An abuse of discretion includes a situation in which the trial court did not engage in a ' "sound reasoning process." ' " *Id*., quoting *State v. Morris*, 2012-Ohio-2407, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "Abuse-of-discretion

review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Id.*, citing *Morris* at ¶ 14.

**{¶ 63}** Except as otherwise provided by law, "[a]ll relevant evidence is admissible," and "[e]vidence which is not relevant is not admissible." Evid.R. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "[I]t is the trial court's province to determine whether, under the circumstances, testimony is 'essentially misleading or too remote' to be deemed relevant . . . Trial courts have 'broad discretion' in determining relevance[.]" *State v. Yarbrough*, 2002-Ohio-2126, ¶ 35, quoting *Whiteman v. State*, 119 Ohio St. 285, 298 (1928) and *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967); *accord Thomas v. Bur. of Workers' Comp.*, 2016-Ohio-7246, ¶ 105 (2d Dist.).

**{¶ 64}** In this case, we find that any effort Ruggles may have taken to ensure that her niece attended school had no bearing on the charges for which she was being tried, which pertained solely to Daughter. Therefore, any testimony regarding Ruggles's efforts as to her niece would not have had a tendency to make any fact that was of consequence to the determination of the charges being tried more or less probable. Accordingly, it was reasonable and not an abuse of discretion for the trial court to exclude the testimony in question on grounds that it was irrelevant. It was also reasonable for the trial court to exclude the testimony as a way to ensure that the jurors did not improperly consider Ruggles's efforts with her niece when deciding the case.

**{¶ 65}** Ruggles's fourth assignment of error is overruled.

## Conclusion

{¶ 66} Having overruled all four of Ruggles's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


EPLEY, P.J. and TUCKER, J., concur.